# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON

**THOMAS RAY, III,**

       **Plaintiff,**

**v.**                               **Case No. 2:14-cv-27457**

**MADONNA PURSELL, DR. STEVEN WOLF, and
UNITED STATES MARSHALS SERVICE,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 30) filed by defendants Madonna Pursell and the United States Marshals Service. This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the defendants' Memorandum of Law in support of their motion, in 2010, the plaintiff was convicted in Illinois of forcible detention while armed. (ECF No. 31 at 1). In 2011, while serving that sentence, the plaintiff was taken and treated at St. Joseph Medical Center in Joliet, IL, where he first received a suprapubic catheter. (*Id.*)[1]

---

[1] As noted in the defendants' Memorandum of Law, to the extent that the plaintiff's Complaint alleges neglect concerning his medical care and treatment prior to or immediately following the placement of the suprapubic catheter in 2011, the plaintiff was not in the custody of the USMS for the Southern District of West Virginia at that time. Thus, such allegations are only considered as background information.

The plaintiff was paroled on his Illinois sentence in 2012. (*Id.*) However, in February of 2013, the USMS for the Southern District of West Virginia received a lead request for the location and apprehension of the plaintiff for violating his parole. (*Id.*)

On February 5, 2013, the plaintiff was apprehended in Huntington, West Virginia, at which time he was also charged in this United States District Court with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). The plaintiff pled guilty to that charge on December 9, 2013, and on March 10, 2014, he was sentenced to serve 78 months in federal prison, followed by a three-year term of supervised release. *United States v. Ray*, No. 3:13-cr-00061, Judgment, ECF No. 72 (March 10, 2014) (Chambers, C.J.).

The plaintiff remained in the custody of the USMS for the Southern District of West Virginia from February 5, 2013 to March 25, 2014, when he was delivered to the custody of the Federal Bureau of Prisons ("BOP") to serve his federal sentence. (ECF No. 31 at 2). The plaintiff's present Complaint concerns his medical treatment at three different contracted correctional facilities during this time period.[2]

The Complaint alleges that, while he was in custody at the Carter County Detention Center ("CCDC"), in Grayson, Kentucky, he was taken to Kings Daughters Medical Center ("KDMC") in Ashland, Kentucky, where his catheter was changed. The Complaint alleges

---

[2]   While he was in USMS custody, the plaintiff was housed at the Carter County Detention Center in Grayson, Kentucky, the South Central Regional Jail in Charleston, West Virginia, and the Northern Neck Regional Jail in Warsaw, Virginia. Among other matters, the plaintiff has filed separate lawsuits concerning his medical treatment while at each of these facilities. *See Ray v. Michelle*, No. 0:15-cv-00007-DLB, 2015 WL 4068022 (E.D. Ky., July 2, 2015) (dismissed with prejudice), *aff'd, Ray v. Michelle*, No. 15-5963 (6th Cir., September 9, 2016); *see also Ray v. PrimeCare Medical, Inc.*, No. 2:15-cv-00948 (S.D. W. Va.) (Johnston, J.) (pending); *see also Ray v. Northern Neck Reg'l Jail*, No. 3:15-cv-00091 (E.D. Va., Aug. 25, 2016) (dismissed without prejudice). The plaintiff has also filed two other lawsuits pertaining to his medical treatment after he was designated to BOP facilities in Allenwood, Pennsylvania and Coleman, Florida. *See Ray v. Ganoe*, No. 3:15-cv-00343-EMK-LQ (M.D. Pa., Oct. 15, 2015) (dismissed); *Ray v. Urology Health Team, PLLC*, No. 5:16-cv-00091-WTH-PRL (M.D. Fla., June 28, 2016) (dismissed without prejudice).

that, although the plaintiff was seeking corrective surgery, nothing more was done at that time. He further alleges that he was told there was no way to know how long he would be at CCDC and that corrective surgery could be performed once he was in BOP custody following his conviction and sentencing. (ECF No. 2-1 at 5). The plaintiff further contends that, while he was at CCDC, he was given the wrong medication and CCDC medical and correctional staff failed to act when he showed them that his wound was draining blood and puss and his catheter was clogged, resulting in pain and suffering. (*Id.* at 5-6). The plaintiff alleges that he repeatedly called the USMS to make them aware of the medical emergencies he was having. (*Id.* at 6). The plaintiff was subsequently transferred to the South Central Regional Jail ("SCRJ") in Charleston, West Virginia.

The plaintiff's Complaint further alleges that, while he was incarcerated at the SCRJ, an unidentified on-site physician told him that, according to his medical records from KDMC, he had refused surgery and, thus, the USMS would not approve any further treatment by an outside urologist. (*Id.* at 7). Thus, the plaintiff alleges that he was, again, told he would have to wait for additional care until he was in BOP custody, or otherwise he would have to go to a free clinic or pay for it himself. (*Id.*) The plaintiff also alleges that, while at the SCRJ, he was forced to sleep on the floor, was falsely placed on suicide watch because he refused to eat one meal, and was falsely accused of removing his catheter. (*Id.*) He further contends that he was subsequently forced to transport to the Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia, eight hours away, with a clogged catheter. (*Id.*)

The plaintiff's Complaint further alleges that, on August 20, 2013, while at the NNRJ, his catheter was again clogged. He contends that he showed the blood and puss draining from the catheter site and blood and sediment collecting in the catheter drain

3

bag to the on-site medical and correctional staff, as well as to "some of the US Marshals that came in 2 (to) NNRJ." (*Id.* at 9-10). The plaintiff further alleges that, on multiple occasions, he was forced to request his medication and medical supplies two or three times before they were provided. (*Id.* at 10). Eventually, the plaintiff sent a letter to defendant Madonna Pursell, Supervisory Deputy United States Marshal (hereinafter "Pursell"), asking for help. Pursell allegedly called the jail to investigate and the plaintiff subsequently began receiving his daily medication. (*Id.* at 11).

According to the Complaint and the defendants' Memorandum of Law, Dr. Reese, the on-site physician at NNRJ, told the plaintiff that he could contact his attorney if he believed he was not receiving proper medical care, and further explained to the plaintiff that he could use the jail's computer lab to teleconference with any physician who would see him. (*Id.* at 11). The plaintiff was ultimately taken to see a urologist, Dr. Hassin, who was allegedly unwilling to provide any treatment other than to change the plaintiff's catheter. The plaintiff alleges that Dr. Hassin used a larger-sized catheter, thus causing additional bleeding. The plaintiff further claims that the USMS denied him pads needed to control leaking, but he was provided the same by the NNRJ staff. (*Id.* at 11-12).

Based upon these facts, the plaintiff asserts that he was subject to "torture, mistreatment, cruel and unusual punishment and lack of medical care" while in the custody of the USMS. (ECF No. 2 at 5). His Complaint names Pursell, Dr. Steven Wolf, Medical Director, USMS Prisoner Operations Division, and the USMS as defendants. Specifically, the plaintiff claims that the care provided and/or offered at the various regional jails was subject to approval by the USMS, Pursell, or other USMS staff and, thus, he seeks to hold those individuals or entities liable for his "neglect and suffering." (ECF No. 2-1 at 1). However, the Complaint is largely devoid of any specific factual allegations

4

concerning Pursell's conduct.[3]  The only specific allegation against Dr. Wolf states that a report concerning the plaintiff's medical treatment submitted by Dr. Wolf was inappropriate because Dr. Wolf never examined him.

Because the plaintiff is proceeding *in forma pauperis*, court officers are responsible for issuance and service of all process.  *See* 28 U.S.C. § 1915(d).  In the instant case, although the USMS and Pursell were served with process, the plaintiff did not provide an address for service upon Dr. Wolf, and the address located on the internet by the court's staff was apparently insufficient.  Thus, Dr. Wolf's summons was returned unexecuted.  Although court officers are responsible for serving process on the indigent plaintiff's behalf, the court is not responsible for properly identifying defendants or locating appropriate service information for the plaintiff.

The plaintiff was subsequently ordered to provide the Clerk's Office with an appropriate address for service of process on Dr. Wolf by October 21, 2016.  He was further advised that the failure to properly serve Dr. Wolf could result in a recommendation for his dismissal as a defendant herein pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  The plaintiff did not provide any address or other contact information and Dr. Wolf has not been served with process.

On September 14, 2016, Pursell and the USMS filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 30) and Memorandum of Law in support thereof (ECF No. 31).  The defendants' motion documents assert that this federal court lacks subject matter jurisdiction to consider any negligence claim brought

---

[3] The only specific allegation concerning Pursell is the plaintiff's statement that he sent a letter to the USMS (Pursell) asking for help, and "USM Pursell called the jail and told the nurse we have [to] get on the same page when dealing with this guy[.]"  (ECF No. 2-1 at 10-11).  The Complaint acknowledges that, after this phone call, the plaintiff began receiving his daily medication.  (*Id.* at 12).

by the plaintiff because such claims must be brought against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, and, furthermore, the plaintiff failed to exhaust the required administrative remedies before filing his Complaint.  (ECF No. 31 at 7-8).  The motion documents also assert that the plaintiff is barred from pursuing relief concerning the adequacy of his medical treatment while he was in USMS custody based upon the doctrine of collateral estoppel because such issues were previously decided by a federal court.  (*Id.* at 9-11). The motion documents further assert that the plaintiff cannot successfully establish a plausible constitutional violation by defendant Pursell and that she is entitled to qualified immunity on such a claim.  (*Id.* at 11-19).  Finally, the motion documents assert that the USMS has sovereign immunity on any constitutional claim the plaintiff is attempting to bring.  (*Id.* at 19-20).

On October 3, 2016, the plaintiff filed a response to the defendants' motion (ECF No. 36), in which he stated that he was unaware of the administrative remedy process and was not informed of the same by his criminal defense counsel.  He further asserts that he made both verbal and written complaints about his medical treatment, including written complaints to Judge Chambers, who was presiding over his criminal case.  (*Id.* at 1).  The plaintiff's response further contends that the USMS, or the contracted facilities, or both, have been untruthful and forged documents that have led to continued problems with his medical treatment.  (*Id.* at 2).  The remainder of the response makes another request for for appointment of counsel, which has been denied by separate Order.

On October 5, 2016, pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was notified of his right and an obligation to file a response to the defendants' motion for summary judgment, submitting affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material

supporting his position in the case.  The plaintiff was also advised that a failure to respond to the motion may result in entry of summary judgment denying the relief sought in the Complaint and dismissing the suit.  Despite these warnings, the plaintiff failed to file any additional response to the defendants' motion, and the defendants did not file a reply. This matter is ripe for adjudication.

## STANDARDS OF REVIEW

### *Dismissal for lack of subject matter jurisdiction*

In the instant case, the defendants have moved for dismissal of the plaintiff's negligence claims, and his deliberate indifference claim against the USMS, under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  The United States Court of Appeals for the Fourth Circuit recently reiterated that "[a] Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *Balfour Beatty Infrastructure, Inc. v. Mayor and City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).  A district court must dismiss a claim if, at any time, it appears that the court lacks jurisdiction over the subject matter of the claim.  Fed. R. Civ. P. 12(h)(3); *Duffield v. Memorial Hosp. Ass'n,* 361 F. Supp. 398 (S.D. W. Va. 1973), *aff'd sub. nom. Duffield v. Charleston Area Medical Ctr.*, 503 F.2d 512 (4th Cir. 1974); *see also Bolin v. Chavez*, 210 F.3d 389 (10th Cir. 2000) (permitting *sua sponte* dismissal for lack of subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure).

### *Dismissal for failure to state a claim upon which relief can be granted*

The defendants' motion also asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct."  *Id.* at 678.

8

### *Summary Judgment*

Alternatively, the defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (ECF No. 30-2).  Where a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56.  *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *Id.*  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  *Overstreet v. Kentucky Cent. Life Ins.* Co., 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

## ANALYSIS

**A.     Dismissal of Dr. Steven Wolf as a defendant herein pursuant to Rule 4(m) of the Federal Rules of Civil Procedure is appropriate because he has not been served with process.**

Although not part of the defendants' Motion to Dismiss or alternative Motion for Summary Judgment, the undersigned proposes that the presiding District Judge **FIND** that Dr. Steven Wolf should be dismissed as a defendant herein because he has not been served with process after the plaintiff was directed to provide a sufficient address for service upon him.[4]  Although officers of the court are charged with assisting the plaintiff with service of process under 28 U.S.C. § 1915(d) (because he is proceeding *in forma pauperis*), neither the court, nor the defendants, are required to be advocates for the *pro se* incarcerated plaintiff.  The court has no responsibility to continue to search for the location of defendant Wolf in order to try to perfect service of process for the plaintiff.  As noted by another Honorable Judge of this court:

> Notwithstanding the difficulties faced by an incarcerated plaintiff, it is not yet, and cannot become, the role of the courts to track down defendants on behalf of incarcerated plaintiffs.  At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made.  Only upon provision of such information – which is absent here – can the courts execute service.

*Skaggs v. Clark*, No. 3:13-cv-03293, 2015 WL 269154, *3 (S.D. W. Va., Jan. 21, 2015) (Chambers, C.J.).

On October 31, 2014, when the plaintiff's Complaint was filed, Rule 4(m) of the Federal Rules of Civil Procedure stated as follows:

> Time Limit for Service - If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or <u>on its own initiative after notice to the plaintiff</u>,

---

[4]  The sole claim against Dr. Wolf appears to be his role in authoring a report summarizing the plaintiff's medical care while in the custody of the USMS without actually examining the plaintiff.

shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added).[5]  Because more than 120 days has passed without appropriate service on defendant Wolf, notwithstanding the undersigned's order for the plaintiff to provide a suitable address for service, the undersigned proposes that the presiding District Judge **FIND** that defendant Wolf has not been properly served and, therefore, the claims against him are subject to dismissal under Rule 4(m).

### B.  The court lacks subject matter jurisdiction over the plaintiff's negligence claims because he failed to exhaust the required administrative remedies under the FTCA.

In the instant matter, the plaintiff's Complaint, which does not specifically identify the legal basis of his claims for relief, contains various allegations that he was "forced to endure" torture, mistreatment, neglect, and suffering, as well as cruel and unusual punishment and lack of medical care.  (ECF No. 2 at 5; ECF No. 2-1 at 1).   The defendants and the undersigned have liberally construed the Complaint to be asserting claims grounded in both negligence and intentional conduct that could be actionable under the federal Constitution.  The presiding District Judge has previously noted that:

> A prospective plaintiff seeking redress against a federal official for injury has two distinct avenues of relief.  He may file a common law tort claim against the United States under the FTCA and-or in the alternative-he may file a constitutional tort claim against the individual officer under *Bivens*.[6]

_____

[5]  Effective December 1, 2015, the period for service under Rule (m) was reduced to 90 days.  However, because the plaintiff's Complaint was filed prior to this amendment, the 120-day period was applicable at the time of filing.  The undersigned notes, however, that the court did not order service of process on the defendants until May 10, 2016 and the summonses were not issued by the Clerk until May 12, 2016 - after the amendment of Rule 4(m).  In deference to the plaintiff, even applying the longer 120-day time period from the date that the summonses were issued on May 12, 2016, defendant Wolfe has never been properly served.  Thus, he is subject to dismissal as a defendant, without prejudice.

[6]  *See Bivens v. Six Unknown Named Fed. Officers of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which established an avenue for pursuit of monetary relief against individual federal employees for federal constitutional violations.

*Sanchez v. McLain*, 767 F. Supp.2d 813, 816-17 (S.D. W. Va. 2011).

The defendants assert that, to the extent that the plaintiff is claiming that they acted negligently with respect to his medical care while he was in USMS custody, his claims are governed by the FTCA and its administrative remedy exhaustion requirement. As noted by the defendants' Memorandum of Law, the FTCA, as amended by the Federal Employee Liability Reform and Tort Compensation Act (also known as the "Westfall Act"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, immunizes federal employees from liability for their "negligent or wrongful acts or omissions . . . while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). Thus, with regard to the plaintiff's negligence claims, the defendants' motion documents assert that the United States of America is the only proper defendant. (ECF No. 31 at 7 n.1). The United States Attorney for the Southern District of West Virginia has provided a Certification pursuant to 28 U.S.C. § 2679(d)(1) certifying that Madonna Pursell was acting within the scope of her employment as an employee of the United States at the time if the incident out of which the plaintiff's claims arose. (ECF No. 43).

Based upon the allegations in the Complaint and the evidence of record, including the United States Attorney's Certification, the undersigned proposes that the presiding District Judge **FIND** that defendant Pursell was acting within the scope of her federal employment at the time of the incident(s) out of which the plaintiff's claims arose and, thus, she is immune from liability for any negligent or wrongful alleged acts or omissions under the Westfall Act. The undersigned further proposes that the presiding District Judge **FIND** that the United States of America is the proper defendant with respect to any such claims and must be substituted as the defendant with respect thereto.

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity. The FTCA provides a limited waiver of sovereign immunity for "money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2675(a). Section 2674 of the Act further provides as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

In order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim under state law. It is a jurisdictional requirement that the plaintiff in such a case file and exhaust an administrative claim prior to filing suit. *See* 28 U.S.C. § 2675; *see also Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993); *Dupont v. United States*, 980 F. Supp. 192, 195 (S.D. W. Va. 1997); *Johnson v. United States*, 906 F. Supp. 1100 (S.D. W. Va. 1995); *McCoy v. U.S.P.S.*, 890 F. Supp. 529, 531-32 (S.D. W. Va. 1995); *Hurt v. United States*, 889 F. Supp. 248, 252 (S.D. W. Va. 1995). (ECF No. 31 at 7-9).

It is apparent from the pleadings that the plaintiff has not exhausted the required FTCA administrative remedies prior to filing his Complaint. On page 3 of the Complaint, the plaintiff concedes that he did not exhaust the available grievance process and he has subsequently admitted that he did not file an FTCA Claim Form (SF-95) or any other type of written notice of his claim with the USMS or any other federal government agencies.

(ECF No. 2 at 3).  In fact, he acknowledges that he was unaware of the administrative remedy requirement (ECF No. 36 at 1), and his ignorance of the requirement and lack of legal training is not a defense to dismissal.  *See Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004) (citing 28 U.S.C. § 2675(a)) ("a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court" and "this requirement applies equally to litigants with counsel as to those proceeding pro se.")  The defendants have also provided a declaration asserting that no FTCA administrative claims concerning the incidents addressed in his Complaint have been filed by the plaintiff with the USMS.  (ECF No. 30, Ex. 4, Decl. of Gerald M. Arbauch).

The failure to file such an administrative tort claim deprives the court of subject matter jurisdiction, and the court may not hold the case in abeyance while the plaintiff exhausts the available administrative remedies.  *McNeil v. United States*, 508 U.S. 106 (1993); *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) ("Since the District Court had no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the time period had expired.")  Thus, dismissal for lack of subject matter jurisdiction is required where the administrative remedy requirement has not been exhausted.  *McNeil*, 508 U.S. at 113.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated that he has exhausted his administrative remedies concerning his negligence or tort claims, which are governed by the FTCA.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that this United States District Court lacks subject matter jurisdiction over such claims.

**C.    The court also lacks subject matter jurisdiction over the plaintiff's deliberate indifference claim against the USMS because the United States has not waived sovereign immunity for such a claim.**

To the extent that the plaintiff's claims can also be construed to be alleging a federal constitutional claim grounded in deliberate indifference to a serious medical need, the defendants contend that the USMS has sovereign immunity for such liability.    An allegation of an intentional violation of an individual's constitutional rights by a federal government employee, such as the plaintiff's claim of deliberate indifference to his serious medical needs (which is cognizable under the Eighth Amendment), would normally be actionable, if at all, in a claim under *Bivens v. Six Unknown Fed. Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which must be brought against an individual employee, not the United States itself.[7]  As noted above and by the defendants' Memorandum of Law, the United States enjoys sovereign immunity unless Congress specifically waives it in a particular statute.  *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  (ECF No. 31 at 19).  The defendants' Memorandum of Law further states:

> Damage claims against the Federal Government under civil rights [laws] or directly under the Constitution are not maintainable because these provisions do not serve as a waiver of sovereign immunity from money damage suits.  [*Fed. Deposit Ins. Corp.*] *v. Meyer*, 510 U.S. 471, 483 (1994).  The claim against the USMS, a federal agency, is tantamount to an action against the United States.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Land v. Dollar*, 330 U.S. 731 (1947).  Just as the United States cannot be sued in its own name without its expressed consent, the USMS cannot be sued *eo nomine* unless Congress explicitly denominated the agency as amenable to such suits.  *Blackmar v. Guerre*, 342 U.S. 512, 514-15 (1952); *Pilon v. United States Department of Justice*, 796 F. Supp. 7, 13 (D.D.C. 1992).

---

[7]  A Bivens claim is a distinctive avenue of relief from the FTCA.  *See Sanchez v. McLain*, 867 F. Supp.2d 813, 816-17 (S.D. W. Va. 2011).

(*Id.*)

Thus, while the plaintiff may seek such relief against an individual defendant, like Madonna Pursell, he is barred from pursuing the same against the United States or its agencies. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this court lacks subject matter jurisdiction over the plaintiff's federal constitutional claim against the USMS due to its sovereign immunity.

### D.    The Complaint fails to state a plausible constitutional claim grounded in deliberate indifference to a serious medical need against defendant Pursell.

The defendants also contend that the plaintiff cannot establish sufficient facts to demonstrate deliberate indifference to a serious medical need on the part of defendant Pursell, and further contend that Pursell cannot be held vicariously liable as a supervisor. Thus, the defendants' motion asserts that she is entitled to qualified immunity on the plaintiff's claims. Before addressing these defenses, the undersigned believes that some explanation of the procedures surrounding approval of medical treatment for federal pre-trial detainees being housed at contracted facilities, and the role of the USMS in those procedures, will be helpful.[8]

According to the defendants' Memorandum of Law, the USMS is responsible for the transport and management of federal prisoners detained while awaiting trial and/or designation and transport to a BOP facility. Pursuant to a Detention Services Intergovernmental Agreement ("IGA") (ECF No. 30, Ex. 1), the USMS arranges for housing such prisoners at regional jails and detention centers on a temporary basis (generally less than one year). Under the IGA, regional jails "shall accept and provide for

---

[8]  Because the defendants rely upon materials outside of the pleadings in support of this claim, the undersigned will treat this portion of the defendants' motion as one for summary judgment.

the secure custody, safekeeping, housing, subsistence and care of federal detainees in accordance with all state and local laws, standards, regulations, policies and court orders applicable to the operation of the Facility."  (ECF No. 31 at 2; ECF No. 30, Ex. 1).  Thus, the defendants note that the USMS is not responsible for the day-to-day housing or management of such prisoners, and assert that a federal pre-trial detainee with complaints about living conditions and services such as medical care must raise the issue with the specific facility and must exhaust that facility's available administrative remedies.  (*Id.*)

Concerning medical services in particular, the IGA provides that the local facility "shall provide federal detainees with the same level and range of care **inside** the Facility as that provided to state and local detainees."  (ECF No. 31 at 3; ECF No. 30, Ex. 1 at 4).  However, "all **outside** medical care provided to Federal detainees must be pre-approved by the Federal Government except in a medical emergency."  (*Id.*)  The defendants' Memorandum of Law further notes that, should the facility's medical staff determine that outside medical care is required, a Prisoner Medical Request ("PMR") is submitted by the facility to the USMS.  (ECF No. 31 at 3; ECF No. 30, Ex. 2, Decl. of Madonna Pursell).  The PMR includes the prisoner's ID number, a description of the service requested, the reason the service is requested and supporting documentation, such as medical records.  (ECF No. 31 at 3).  Upon receipt by the District Office, the PMR is submitted to the Office of Interagency Medical Services ("OIMS") for approval.  (*Id.*)  The defendants' Memorandum of Law notes that the District Office may also approve certain medical care in an emergency but, generally, the PMRs are submitted to OIMS.  (*Id.* n.3).  The Memorandum of Law further notes that, due to the usual short duration of time that a pre-trial detainee is in such custody, the USMS bases approval of care on medical

necessity or a serious medical need.  (*Id.* at 3).  In fact, according to the defendants'

Memorandum of Law, USMS Policy Directive 9.4 concerning Prisoner Health Care states

that "[m]any medically appropriate, non-emergent procedures can and will be delayed

until after the prisoner's judicial status is resolved, as long as there is no serious health

risk to the prisoner."  USMS Policy Directives, 9.4 Prisoner Health Care.  (*Id.*)[9]  If the

PMR is approved, it is returned to the contracted facility.  If it is not approved, there is an

established appeal and review process.  (*Id.*)

The defendants assert that, between March 3, 2013 and February 20, 2014, eight

PMRs were submitted for the plaintiff concerning his medical treatment.  (ECF No. 31 at

3; ECF No. 30, Ex. 3).  Seven of the eight concerned urologic care related to the plaintiff's

suprapubic catheter, and six of those were approved by OIMS.  (*Id.*)  The seventh was of

an emergent nature and was approved at the District Office level.  (*Id.*)  The eighth PMR

was a notification of an alleged hunger strike by the plaintiff, which did not require

approval or disapproval by OIMS.  (*Id.*)  The Memorandum of Law further notes that each

approval was given within 24 hours of submission.  (*Id.*)

In light of these facts, the defendants contend that the plaintiff cannot establish an

actionable claim against defendant Pursell based upon deliberate indifference to a serious

medical need.[10]

---

[9]  The defendants' Memorandum of Law states that the rationale for this policy is multifaceted, including considerations for continuity of care, the ability of the USMS to procure health services versus that of the BOP, and budget.

[10]  Because the plaintiff was a federal pre-trial detainee, his claim must be addressed under the Fifth Amendment's due process clause and not the Eighth Amendment's cruel and unusual punishment clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). However, the inquiry under both amendments is analogous:  whether the defendant exhibited deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), *overruled on other grounds by* Wilkins *v. Gaddy*, 559 U.S. 34 (2010).  Thus, courts often rely upon Eighth Amendment precedent when analyzing such claims by pre-trial detainees. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

In order to state a cognizable claim of deliberate indifference to a serious medical need, the plaintiff must establish both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As noted by the defendants, the objective component asks whether an alleged deprivation is "sufficiently serious," *Wilson*, 501 U.S. at 298, while the subjective component is concerned with the defendant's culpable state of mind; that is, whether the defendant acted with deliberate indifference to a serious medical need.

"Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990). Additionally,

> [d]eliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852. The defendants further note that the Fourth Circuit has required a plaintiff to establish that his serious medical need was not timely or properly treated. *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001). (ECF No. 31 at 12). The defendants' Memorandum of Law asserts that, even assuming that the plaintiff's condition is a serious medical need, the plaintiff is essentially disagreeing with the judgment of the medical providers and the medical care he received at the various regional jails where he was housed, which does not give rise to a federal constitutional claim. *See Lewis v. Angelone*, 926 F. Supp.69, 73 (W. D. Va. 1996); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). (ECF No. 31 at 14-15). As noted by the Fourth Circuit, an

inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The Memorandum of Law further contends that an inmate cannot establish deliberate indifference where the medical records clearly show that the inmate received timely and continuous care for his medical conditions. *See Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998); *Davis v. Williamson*, 208 F. Supp.2d 631 (N.D. W. Va. 2002). Accordingly, the defendants assert that, when Pursell reviewed the eight PMRs and forwarded them to the appropriate medical personnel at OIMS, she acted appropriately and may not be held liable for deliberate indifference to the plaintiff's serious medical needs based either upon her direct conduct, or vicariously under a theory of *respondeat superior* or supervisory liability. (ECF No. 31 at 15-16).

In *Iqbal, supra*, the Supreme Court essentially abolished supervisory liability in *Bivens* claims by rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," and determined that "purpose rather than knowledge" was required to impose liability. 556 U.S. at 677. (*Id.* at 15-16). Therefore, unless the plaintiff can demonstrate that some individual conduct of Pursell constituted deliberate indifference to his serious medical needs, she cannot be liable for any claim for damages on his *Bivens* claim.

The undisputed facts presented by the defendants demonstrate that Pursell forwarded the PMRs received from the contract facilities to OIMS, which was her only responsibility concerning the same since she is not a medical provider who could exercise medical judgment. Moreover, the plaintiff has failed to identify any individual action or

inaction by Pursell that constituted deliberate indifference or otherwise clearly violated his constitutional rights. Therefore, the undersigned proposes that the presiding District Judge **FIND** that the undisputed facts establish, as a matter of law, that Pursell was not deliberately indifferent to the plaintiff's serious medical needs and, thus, she is entitled to judgment as a matter of law on the plaintiff's *Bivens* claim.

Likewise, Pursell is entitled to qualified immunity on the plaintiff's *Bivens* claim. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.* In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court noted that the doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."

Again, the defendants note, the plaintiff has not identified any conduct by Pursell that would clearly be unlawful to a reasonable officer within the context of the facts as pled. (ECF No. 31 at 19). Because the plaintiff cannot establish a constitutional violation,

the undersigned proposes that the presiding District Judge **FIND** that Pursell is also entitled to judgment as a matter of law based upon qualified immunity.

## RECOMMENDATION

For the reasons stated herein,[11] it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 30) and dismiss this matter from the docket of the court.  The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*,

---

[11]  Because there are other dispositive reasons for the dismissal of the Complaint, with prejudice, the undersigned believes it is unnecessary to address the defendants' collateral estoppel argument.

727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

June 23, 2017

Dwane L. Tinsley
United States Magistrate Judge